# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| JAMES L. CHRISTIANSEN, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 11 CV 7998 |
| v. | ) | Hon. Charles R. Norgle |
| UNITED AIRLINES, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Plaintiff James L. Christiansen ("Christiansen") sues Defendant United Airlines ("United") for employment discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Before the Court is United's Motion for Summary Judgment. For the following reasons, the motion is granted.

### I. BACKGROUND[1]

Christiansen has been employed by United, a commercial airline, since May 24, 1988, holding the classification of Ramp Serviceman throughout his entire employment. As a Ramp Serviceman, Christiansen is currently paid $21.13 hourly. The terms and conditions of employment for the Ramp Serviceman position are governed by the Collective Bargaining Agreement ("CBA"), negotiated between United and the International Association of Machinists and Aerospace Workers (the "Union"). Christiansen is a member of the Union. The Union is not a party to this action. The job description for Ramp Serviceman, which was approved by the Union, provides, in part, that "[d]uties include the pulling, pushing of carts and containers;

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements, and notes properly disputed facts within the text.

performs duties in walking, standing, bending, kneeling and stooping positions; lifts freight, baggage and other heavy items – up to 70 pounds." Def. Statement of Material Facts ¶ 8 (internal quotation marks and citation omitted).

Pursuant to Article X of the CBA, "[s]eniority plus the ability to satisfactorily perform the work required for the job in question shall govern all employees covered by this Agreement in preference of shifts . . . fixed day off schedules within a shift in work groups which had more than one work schedule." Id. ¶ 10 (internal quotation marks and citation omitted). In other words, the CBA requires that United put employees in a position based upon their seniority as long as they have the skill and ability to perform it. In addition, United has the right, as management, to change the start and end times and work schedules of its employees pursuant to the CBA. Article IV of the CBA provides that United "will establish as necessary the number of . . . Ramp Serviceman . . . for the needs of the service on each shift at any . . . place where employees covered by this Agreement are located." Id. ¶ 12 (internal quotation marks and citation omitted).

In 2003, Christiansen had rotator cuff surgery on his right shoulder. On February 2, 2005, Christiansen's physician informed United that he has the following permanent work restrictions: (a) no lifting over 50 pounds at or below waist level; (b) no outward reaching; and (c) no reaching above the shoulder. United accepted these permanent work restrictions. Because of his permanent work restrictions, Christiansen is unable to perform the 70 pound lifting duty provided in the Ramp Serviceman job description.

United accommodated Christiansen's permanent work restrictions by allowing him to work in the Product Sort sub-area called the "Matrix." In the Matrix, Christiansen manually

2

encodes bags (enters the airport destination code into computer) and scans them if the bags are not read by the scanners on the conveyor belt system so that the bags can be sent to the correct pier for delivery. From time to time, Christiansen was pulled out of the Matrix to work an assignment scanning bags at various gates. Until 2007, Christiansen was also eligible to work the assignment of hot bag runner.

From 2004 to 2007, Christiansen bid for shifts and Regular Days Off ("RDO")[2] within the Product Sort work area, received his shifts within the Product Sort area, and was then assigned to the Matrix by a supervisor. On August 19, 2007, United and the Union separated the Matrix from Product Sort for bidding purposes. As such, a Ramp Serviceman with permanent restrictions that prevented him from doing full-time Ramp Service work was only allowed to bid on the Matrix work area. The parties dispute when the Matrix was completely removed from Product Sort and made its own work area for bidding purposes. United contends that it was in 2007; Christiansen, however, claims that the change occurred in 2010.

On March 20, 2008, Christiansen complained to Human Resources about being discriminated against based upon his belief that the separate bidding process for the Matrix caused work-restricted employees to become segregated from the rest of the workforce. Christiansen received a written response stating that there was no violation of United's Harassment and Discrimination policy, and explaining that United "decided to realign its manpower needs in [Christiansen's] work area, and that this requires some employees in [Christiansen's] work area . . . to change shifts." Def. Statement of Material Facts ¶ 40 (internal quotation marks and citation omitted) (alterations in original). The letter further explained that

---

[2] An RDO pattern determines what days an employee will have off from work.

3

"this change of shifts is not discriminatory, particularly since [Christiansen] will continue to be reasonably accommodated in [his] work area." Id. (internal quotation marks and citation omitted) (alteration in original). Christiansen showed the letter to the Union grievance committee, which decided not to file a grievance on his behalf. This was the only internal complaint about discrimination that Christiansen made to United. On May 7, 2008, Christiansen filed a charge of ADA discrimination with the Equal Employment Opportunity Commission (EEOC).

Christiansen initiated this action pursuant to the ADA on November 10, 2011. United now moves for summary judgment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Magnus v. St. Mark United Methodist Church, 688 F.3d 331, 336 (7th Cir. 2012). The Court draws all reasonable factual inferences in favor of the nonmoving party. Id. (citing Spivey v. Adaptive Mktg. LLC, 622 F.3d 816, 822 (7th Cir. 2010)). But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Egonmwan v. Cook Cnty. Sheriff's Dep't, 602 F.3d 845, 849 (7th Cir. 2010) (internal quotation marks and citation omitted). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for

4

summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). "To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in [his] favor; if [he] is unable to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial, summary judgment must be granted." Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 662 (7th Cir. 2011) (internal quotation marks and citation omitted).

## B. Failure to Accommodate

Christiansen argues that United failed to reasonably accommodate him in violation of 42 U.S.C. § 12112(b)(5)(A). "To establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. James v. Hyatt Regency Chi., 707 F.3d 775, 782 (7th Cir. 2013) (internal quotation marks and citation omitted). To survive summary judgment, a plaintiff must present evidence, if believed by a trier of fact, that would establish all three elements of his claim. Id. The applicable EEOC regulation, interpreting the ADA, defines "disability" as: "(1) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) [a] record of such an impairment; or (3) [b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2(g) (2007); see also Steffen v. Donahoe, 680 F.3d 738, 743 (7th Cir. 2012) (citations omitted). The existence of a medical condition alone does not prove disability under the ADA. Fleishman v. Cont'l Cas. Co., 698 F.3d 598, 607 (7th Cir. 2012) (citations omitted). A plaintiff must demonstrate that his impairment substantially limits a major life activity. Burnett v. LFW

Inc., 472 F.3d 471, 484 (7th Cir. 2006). However, the parties do not address whether Christiansen's permanent work restrictions based upon the physician's note of 2005—no lifting over 50 pounds at or below waist level, no outward reaching, and no reaching above the shoulder—substantially limit a major life activity. Rather, it appears that United regards Christiansen as disabled in so far as it considers these to be the type of work restrictions that prevent him from performing the essential functions required of a Ramp Serviceman. It is undisputed that United has been aware of Christiansen's permanent work restrictions since 2005. At issue is the third element of Christiansen's prima facie case: whether United provided a reasonable accommodation.

It is undisputed that United has accommodated Christiansen for over seven years by assigning him to work in the Product Sort sub-area called the Matrix, where, among other things, he manually encodes bags (enter the airport destination code into computer) and scans them if the bags are not read by the scanners on the conveyor belt system so that the bags can be sent to the correct pier for delivery. According to Christiansen, this accommodation—which he concedes was once reasonable—became unreasonable in 2007 when the bid policy for shifts and RDO patterns changed. Christiansen argues that as a result of the bid policy change, his seniority rights under the CBA have been systematically denied due to his disability. However, Christiansen admits that within the Matrix there are a variety of shifts and day-off schedules, and that he is allowed to bid for any of the shift schedules. And, it is undisputed that the decision of what shift Christiansen receives is based on his seniority date, which is unaffected by his alleged disability. It is also undisputed that the only way an individual can be moved from a shift is by bidding. Christiansen merely complains that he is bidding against a smaller pool of employees;

and therefore his seniority may not allow him to hold the shift of his preference. But "[a]n employer need only provide a qualified individual with a 'reasonable accommodation, not the accommodation [the employee] would prefer.'" Hoppe v. Lewis Univ., 692 F.3d 833, 840 (7th Cir. 2012) (quoting Rehling v. City of Chi., 207 F.3d 1009, 1014 (7th Cir. 2000)) (alteration in original).

"An employer satisfies its duty to reasonably accommodate an employee with a disability when the employer does what is necessary to allow the employee to work in reasonable comfort." Id. (citing Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 546 (7th Cir. 1995)). Here, Christianson's assignment within the Matrix allows him to work with his permanent medical restrictions, i.e., without lifting over 50 pounds at or below waist level, without outward reaching, and without reaching above his shoulder. There is no genuine dispute that United has done what is necessary to allow him to work in reasonable comfort.

Additionally, Christiansen's claim fails to the extent he argues that United failed to engage in an interactive process to determine a reasonable accommodation. "The ADA seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations." Rehling, 207 F.3d at 1016 (citing Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997)); see also Basden v. Prof'l Transp., Inc., 714 F.3d 1034, 1039 (7th Cir. 2013) ("[T]he failure to engage in the interactive process required by the ADA is not an independent basis for liability under the statute, and that failure is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." (citing Rehling, 207 F.3d at 1016)).

Because Christiansen fails to put forth any evidence that would permit a reasonable jury to find that United failed to accommodate him, summary judgment is appropriate.

**C. Retaliation**

Christiansen argues that United retaliated against him for engaging in protected activity in violation of 42 U.S.C. § 12203(a). Specifically, Christiansen claims that in response to his May 7, 2008 EEOC charge, United retaliated against him in June of 2010 when, following a bid for shift assignments, he was not awarded his first choice shift. To establish a retaliation claim, a plaintiff may proceed under either the direct or indirect method of proof. Cloe v. City of Indianapolis, 712 F.3d 1171, 1180 (7th Cir. 2013) (citing Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522, 657 F.3d 595, 601 (7th Cir. 2011)). As an initial matter, however, United argues that Christiansen's retaliation claim fails as a matter of law because it was not raised in his underlying EEOC charge, which alleges only disability discrimination. See 42 U.S.C. § 12117 (applying the powers, remedies, and procedures set forth under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* to any person alleging disability discrimination); Jones v. Res-Care, Inc., 613 F.3d 665, 670 (7th Cir. 2010) ("[G]enerally, Title VII claims that were not included in an EEOC charge are barred." (citing Sitar v. Ind. Dep't of Transp., 344 F.3d 720, 726 (7th Cir. 2003))).

Although retaliation and discrimination charges are not normally "like or reasonably related to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another," such claims "may be so linked, however, where they are so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." Sitar,

344 F.3d at 726 (internal quotation marks and citations omitted). Here, it is clear that the discrimination and retaliation claims are not so related and intertwined in time as over two years elapsed between the protected activity and the alleged retaliation. Thus, Christiansen's retaliation claim is not like or reasonably related to the discrimination claim he made in his EEOC charge, and is therefore procedurally barred.

In any event, Christiansen's retaliation claim fails on the merits because he produces no evidence of an adverse employment action—one of the elements of his prima facie case. James, 707 F.3d at 782 ("Under both the direct and indirect methods, the plaintiff must present evidence that a materially adverse action was taken by their employer." (citations omitted)). While Christiansen may be aggrieved by the bidding process for shift assignments, "[n]ot everything that makes an employee unhappy is an actionable adverse action." Brown v. Advocate S. Suburban Hosp., 700 F.3d 1101, 1106 (7th Cir. 2012) (internal quotation marks and citation omitted). Indeed, "[a] change in shift assignments will not normally be sufficient to qualify as an adverse employment action, unless it is accompanied by some other detriment." Ellis v. CCA of Tenn. LLC, 650 F.3d 640, 650 (7th Cir. 2011) (citing Grube v. Lau Indus., Inc., 257 F.3d 723, 728 (7th Cir. 2001)). Christiansen fails to point to any "objective hardship," such as a reduction in pay or significantly diminished job responsibilities, to establish that his change in shift qualifies as materially adverse. Id.

Nonetheless, Christiansen asks the Court to find detriment because shift preference based on seniority is specifically guaranteed by the terms of his CBA; and a junior employee—who was not permanently restricted (regarded as disabled)—received his preferred shift in the Matrix in

the June 2010 bid (effective June 20, 2010 until September 24, 2010).[3] But this is a red herring; "an employee must show that 'material harm has resulted from . . . the challenged actions.'" Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (quoting Haugerud v. Amery Sch. Dist., 259 F.3d 678, 692 (7th Cir. 2001)) (additional citation omitted). Here, Christiansen's perceived retaliatory breach of the CBA resulted in mere inconvenience—not a materially adverse employment action. See id. ("We have defined an adverse employment action as more disruptive than a mere inconvenience or an alteration of job responsibilities." (internal quotation marks and citation omitted)); Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993) ("[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities."). Because Christiansen fails to establish a materially adverse employment action, his retaliation claim fails.

Additionally, to the extent Christiansen attempts to argue retaliation based upon 2012 meetings with managers relating to acquiring a no-bid position, this argument is raised for the first time in opposition to summary judgment (it was not disclosed during discovery) and is therefore rejected. Abuelyaman v. Ill. State Univ., 667 F.3d 800, 813-814 (7th Cir. 2011). Accordingly, summary judgment on Christiansen's retaliation claim is appropriate.

### D. Disparate Treatment

The parties dispute whether Christiansen's original pro se complaint—which was not amended by his counsel—asserts a claim for disparate treatment disability discrimination. To the extent that a disparate treatment claim remains, summary judgement must be granted because, as

---

[3] Plaintiff alleges that he spoke to the Union about a more junior employee being awarded a shift through the bid, but the Union would not accept his grievance. It is undisputed that a grievance was never filed with the Union.

discussed above, Christian fails to show that he suffered a materially adverse employment action. See Hoffman v. Caterpillar, Inc., 256 F.3d 568, 575 (7th Cir. 2001) (holding that a plaintiff must show a materially adverse employment action in ADA cases that deal with other "terms, conditions, and privileges of employment," but not in cases alleging discrimination with respect to hiring, discharge, or the other enumerated actions).

### III. CONCLUSION

For the foregoing reasons, United's motion is granted. Summary judgment is entered in favor of United on all of Christiansen's claims.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 17, 2013